# Richmond.

## Dudley v. Lewis Shoe Co.

### January 18, 1912.

### Absent, Cardwell, J.

1. DECLARATION—*Sufficiency—Bill of Particulars.*—A declaration in tort which distinctly alleges all the material facts upon which the right of recovery is based, is good on demurrer. Further details, if desired, may be supplied by a bill of particulars.

2. LANDLORD AND TENANT—*Flooding Premises of Lower by Upper Tenant—Liability of Landlord.*—A landlord who lets rooms in a building to various tenants, retaining no control over any part of the building and not supplying heat, servant's attendance, or other service to any of his tenants, is not liable for damages to a lower tenant occasioned by the flooding of his premises, as the result of freezing and thawing of water pipes in the exclusive control of an upper tenant, where the pipes were properly located, the plumbing well done with suitable material, and a stop cock for turning off the water was provided within easy reach.

3. LANDLORD AND TENANT—*Upper and Lower Tenants—Damage from Freezing Pipes—Duty to Prevent Freezing—Case at Bar.*—A provision in a contract of lease that the landlord "will unstop all waste pipes that may become choked by negligence or inattention on the part of those using them, and will repair all water pipes that may burst from freezing because of failure to turn the water off," does not render the landlord liable for damages by water to a lower tenant resulting from the freezing and bursting of the pipes of an upper tenant who had exclusive control of the upper floor, and who gave no notice to the landlord that the pipes were out of order. The duty to repair pipes after they got out of order did not impose upon the landlord the duty of preventing them from freezing and getting out of order.

4. INSTRUCTIONS—*Fully Instructed—Abstract Propositions.*—It is not error to refuse to give further instructions on a point upon which the jury has already been sufficiently instructed, nor to refuse instructions upon mere abstract propositions of law.

Error to a judgment of the Corporation Court of the city of

Danville, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*R. W. Peatross, Eugene Withers,* and *Harris & Harris,* for the plaintiff in error.

*Julian Meade,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

The defendant in error was a tenant of the plaintiff in error,. occupying one of several stores in the "Dudley Block," situated on the corner of Main and Union streets in Danville. The second and third stories of the building, which cover all the stores in the block, were occupied by numerous tenants as offices, lodge rooms, club rooms, etc., the landlord occupying no part of the building, and retaining no portion thereof for her own use. The building was supplied throughout, for the convenience of the tenants, with water pipes, taking water to the respective apartments. The building was not supplied with heat, and was not attended to or looked after by a janitor or any other person in the employment. of the landlord, the respective tenants having their own servants and furnishing the heat for their respective apartments. A water closet was situated on the second floor, over the store of the defendant in error, which was in the exclusive occupation and use of Dr. Robertson, one of the tenants on that floor. On the night of December 30, 1909, the pipe in this closet burst, as a result of freezing and thawing, and the water overflowed the closet, ran through the floor and ceiling into the store below of the defendant in error, flooding and greatly damaging its stock of goods. Thereupon this suit was brought by the Lewis Shoe Company to recover damages for the loss sustained. There was a verdict and judgment for the plaintiff, to which judgment this writ of error was awarded.

There was no error in the court's refusal to sustain the demurrer to the declaration. The material facts are distinctly alleged, leaving no need for conjecture as to any fact upon which the right

of recovery was based.  The declaration, together with the bill of particulars filed therewith, gave full and sufficient notice of the nature and character of the plaintiff's claim, pointing out the particular pipe which burst and its location.

In the case of *Kecoughtan Lodge* v. *Steiner & Kaufman*, 106 Va. 589, 56 S. E. 569, where the building was under the superintendence and control of a janitor, who was the employee and agent of the landlord, quoting from Farnham on Waters and Water Rights, it is said: "If the injury is caused by leakage from pipes in other portions of the building than that occupied by the injured tenant, the question of the landlord's liability will depend upon his connection with the injury.  He is liable for all injuries resulting from his own negligence, and an exemption clause in the lease will not include such injury."

We find a full and very helpful discussion of the duties and liabilities of landlord and tenant in the case of *McCarthy* v. *New York County Savings Bank*, 74 Maine 315, 43 Am. Rep. 591.  In that case the room occupied by the tenant was furnished with a water basin, the apertures of which were not sufficient to carry off all the water that was delivered by the faucet when left open. The tenant left the faucet open and the water overflowed and injured the goods of another tenant occupying rooms on a lower story.  It was held that the landlord was not liable, the court saying:  "There is nothing to indicate that his (the tenant's) control of the faucet which he negligently left open overnight, thereby causing the damage alleged, was not as exclusive of any rightful exercise of authority by the landlord in regard to its use as was his possession of any part of the leased premises.  The bowl, supplied with water, was in the room when Fiske began his tenancy under the defendants.  He used it and paid the rent. He was tenant of the bank, as to the bowl and its appurtenances, as of the other parts of the room, and with such rights of possession and control as pertained to the tenancy.  These fixtures were leased to him, and, as lessee, he was the actual occupant of them." Again it is said: "That water was introduced into the building by the bank, that they caused the pipes to be laid and maintained and paid the water rates, are not facts which tend to show their direct and present control of faucets within the rooms of their tenants.

They may enter, if necessary, to change or repair the pipes, but while the room with its fixtures is in the possession of a tenant it is he who sustains to third persons the liability of an occupant, as the landlord sustains that of owner." And further it is said: "The liability of the landlord does not follow from the fact that the building does not contain the latest and most improved system of water pipes. He does, not insure against the negligence of his tenants, nor is he bound to construct his building so as to reduce the possibilities of damage from such negligence to an absolute minimum."

In Shearman & Redfield on Negligence, Vol. II., sec. 723, it is said: "If the landlord provides pipes and other plumbing of good quality, and surrenders possession, the tenant only is responsible for the mode in which these things are used, and for any overflow, caused either by neglect to turn off the water or by such misuse of the works as deprives them of power to stop the flow of water."

In the case at bar the uncontradicted evidence shows, in addition to what has been already stated, that the building in question was planned and erected under the supervision of a competent architect, that the plumbing work was done by an experienced plumber, and the material used the best the market afforded; that the water closets were properly located, and that each of them, including the one used and occupied by Dr. Robertson, was provided with a stop cock on the supply pipe which ran up to each tank, and was within easy reach of any one who desired to turn off the water and thereby prevent its escape in the event of freezing; that Dr. Robertson was the sole occupant, and had the exclusive use and control, in connection with the offices rented by him, of the water closet in which the pipe froze and burst; that the key hung in his office, where the landlord could and did get at it when repairs were to be made; that whenever the water closet became stopped up, or in any way out of order, he notified the agents of the landlord, and they always repaired it or put it in order; that four days prior to the bursting of the pipe which did the damage complained of, when it was very cold, he tried to turn the stop-cock and stop the flow of water in his tank, but it was frozen and would not turn, and that it remained frozen for four days; that he did not tell the tenant below of the frozen pipe above him, and did

not notify the agents of the landlord that the pipe was out of order, because it had frozen before and always melted, and he thought it would do so again.

The plaintiff asked for two instructions, which were given, over the protest of the defendant, as follows:

1.  "The court instructs the jury that if they believe from the evidence that it was the duty of the defendant to look after, and keep in repair, the water pipes in the water closet used by Dr. J. M. Robertson in connection with the office let to him by the defendant, and that plaintiff had no right or control over said pipes, then the court instructs the jury that it was the duty of defendant to use ordinary and reasonable care in inspecting and caring for said pipes, so as to prevent them from freezing, bursting, and overflowing the premises of plaintiff, situated under them."

2.  "The court instructs the jury that if they believe from the evidence in this cause that, under the rental contract or agreement between defendant and Dr. Julian Robertson, it was the duty of defendant, Lucy E. Dudley, to look after, care for, and keep in order the water pipes in the closet rented to and occupied by Dr. Julian Robertson, that then it was her duty to use ordinary and reasonable care to prevent said water pipes from freezing, bursting, and discharging water on the goods of the plaintiff; and the mere fact that the tenant, Dr. Robertson, may have called attention to needed repairs to the pipes in his closet, and requested the defendant to enter and make such repairs, does not shift the responsibility or duty which she may have owed to other tenants in her building to him."

These instructions were misleading, without evidence to support them, and were calculated to impose upon the defendant, as landlord, responsibility for duties she was under no obligation to perform. There is no evidence tending to show that it was the duty of the defendant to look after and care for the pipes in Dr. Robertson's office, with a view to keeping them from freezing and bursting. On the contrary, the evidence shows that Dr. Robertson had been placed in the exclusive possession and control of the water closet, to which no one, not even the landlord, had access, except by procuring from him the only key that opened the door to the closet; that the only duty devolving upon the landlord in

connection with the closet was to repair it or put it in order whenever notified that it was out of order, which she had always done promptly. The evidence on this point is uncontradicted and conclusive, and shows that the defendant's sole duty with respect to this closet was exactly the same that she assumed under her written lease with the plaintiff, which provides, as her obligation in this matter, that she "will unstop all waste pipes that may become choked by negligence or inattention on the part of those using them, and will repair all water pipes that may burst from freezing, because of failure to turn the water off."

The instructions erroneously told the jury that the duty of the landlord to repair the pipes when out of order imposed upon her the duty of preventing them from getting out of order—in other words, that it was her duty to inspect and care for the pipes in Dr. Robertson's closet, so as to prevent the water in them from freezing and the pipes from bursting. There is no. evidence in support of this proposition. The instructions ignored the difference between the duty of the landlord in the matter of repairing and keeping pipes in order, and the duty of the tenant, in his use of the premises, to avail himself of the precautions provided to prevent the escape of water, in the event of the pipes freezing and bursting.

The defendant asked for fourteen instructions, ten of which were given, and objection is taken to the action of the court in refusing to give the remaining four. In this there was no error. The ten instructions given for the defendant fully submitted her case to the jury. The four rejected instructions were either fully covered by the ten which were given, or contained an abstract proposition of law which was immaterial.

For the error pointed out in the two instructions given for the plaintiff, the judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*