# Richmond.

## ADAMS GRAIN AND PROVISION COMPANY v. CHESAPEAKE AND OHIO RAILWAY COMPANY.

### March 16, 1916.

1. LANDLORD AND TENANT—*Repairs to Premises—Special Covenants—Common Law Rule.*—At common law, in the absence of express covenants to the contrary, the lessor is under no obligation to keep the premises in repair, and the lessee takes them as he finds them.

2. LANDLORD AND TENANT—*Special Covenants—Rent of Floor Space—Bursting of Pipes—Damages—Demurrer to Evidence.*—Where a water pipe was placed in a building solely for the purpose of fire protection, extending from the ground to the top floor, and was wholly in the possession and care of the landlord who leased floor space on one of the floors to a lessee, and the lessee had no use of, and no power or authority to interfere with, the pipe, nor in any manner to control or regulate the flow of water, such pipe was in no sense appurtenant to the leasehold, nor a part of it, and it cannot be said as a matter of law that the landlord is not liable for damages resulting to the tenant from the freezing and bursting of such pipe, although there was no special covenant in the lease covering such liability. The inquiry concerning the landlord's negligence involved a mixed question of law and fact, which should have been submitted to the jury upon correct instructions, and hence, upon a demurrer to the evidence by the landlord, the question should be decided against him.

Error to a judgment of the Law and Equity Court of the city of Richmond. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*J. Kent Rawley* and *John Howard,* for the plaintiff in error.

*D. H. & Walter Leake,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The essential facts of this case, from the standpoint of a demurrer to evidence, are these: Plaintiffs in error, who are wholesale dealers in hay, flour, grain, etc., leased from the defendant in error two-thirds of the floor space on the first floor of its two-story brick warehouse, located at the corner of Marshall and Seventeenth streets, in the city of Richmond. The leased space included the southern end of the building, and was partitioned off from the remainder of the floor, which together with all the rest of the building was reserved by the lessor and was wholly in its possession and control. Defendant used the reserved space as a storage warehouse, and maintained a force of employees to carry on the business. A six-inch iron water pipe extended from beneath the floor (where it was connected by another pipe with the city water main) along the wall of the building through the leased space into the second story where a fire hose connection was maintained. The pipe was not intended to furnish water to the leased premises, or in any manner to be used by the lessees. It was under the control of the defendant, and was solid the entire distance between the lower and upper floors, without a stopcock or other contrivance to cut off the water.

During the period from January 13 to January 17, 1912, the weather was extremely cold, and on the morning of January 17th the pipe burst in the leased premises from freezing and thawing, and flooded the storeroom with water, causing the damage to plaintiffs' goods of which they complain. They promptly notified defendant's employee in charge of the building and other officers and agents of the happening of the accident, and assisted them in the unavailing effort to discover some place to cut off the water. This was finally done by means of a stopcock maintained by the city and controlled by its employees, which was located in Seventeenth street about fifty feet away from the building.

In an action by plaintiffs to recover damages for the loss suffered, the defendant interposed a demurrer to the evidence, which the court sustained, and to that judgment this writ of error was granted.

The correctness of the contention that at common law, in the absence of express covenants to the contrary, the lessor is under no obligation to keep the premises in repair and the lessee takes them as he finds them, may be conceded. In the effort to bring the case within the influence of that rule, the points were stressed that inasmuch as there were no special covenants on the subject and the break in the water pipe which caused the damage occurred on the leased premises, no responsibility therefor rested upon defendant.

Upon the facts of this case, as matter of law, we cannot attach controlling significance to these circumstances. It is true, as remarked, that the water pipe, as a conduit to transmit water to the terminus on the upper floor, passed through plaintiffs' storage room; still, it was in no sense appurtenant to the leasehold, and by no fair construction could be said to constitute any part of it. It was only intended to serve the purpose of a fire plug to draw water from the city main to extinguish fire, with the distributing point on part of the premises reserved by defendant and wholly in its possession and charge, while plaintiffs possessed neither the authority nor power to interfere with, or in any manner control or regulate, the flow of the water. In principle this case is not distinguishable from one in which damage results to a lower tenant by leakage from a frozen soil pipe passing through his store room from a water closet on the upper floor, of which the lessor has exclusive ownership, use and management. *Kecoughtan Lodge* v. *Steiner, &c.,* 106 Va. 589, 56 S. E. 569, 10 Ann. Cas. 256. See, also, *Dudley* v. *Lewis Shoe Co.,* 113 Va. 41, 73 S. E. 433.

In 3 Farnham on Waters and Water Rights, at section 966, it is said: "The landlord is responsible for the condition of the

pipes designed for the use of all tenants of a building and which are under his control, and is liable for injuries occasioned by permitting them to get out of order."

In *Hargroves* v. *Hartsopp* (1905), 1 King's Bench Div. 472, a no less eminent authority on the common law than the late Chief Justice Lord Alverstone (in holding lessors liable for damages to tenants caused by a defective rain-water gutter) observes: "It may be that a covenant by the landlord to repair is not to be implied in respect to those portions of the premises which are actually demised to the tenant. It is enough to say that that is not this case. Here the gutter was not demised. And the question is whether under these circumstances the landlord is not under a duty to take reasonable care to prevent a gutter which is under his control from becoming stopped up, whereby damage may happen to the occupants of the floors below. I think there is, and that there being evidence of a failure to discharge that duty, inasmuch as the defendants never inspected the gutters, and delayed repairs even after the receipt of notice, they are liable for the damage which ensued. Even if it were true, as contended, that in such case no duty to take care can arise, independently of covenant, except in respect of acts of commission. I think here the defendants were guilty of an act of commission. A person who maintains an artificial thing like a gutter used for the very purpose of carrying off the rain water from the roof in an improper condition after notice may be said to be guilty of an act of commission, and he is, in my opinion, under a duty to take care that as a result of that act no damage happens to the occupants of the house."

The above authorities sufficiently illustrate the governing principles applicable to the facts of this case, and it would be a fruitless task to review the numerous cases found in briefs of counsel.

Nor have we deemed it necessary to consider the effect of noncompliance with the city ordinances, in respect to providing

water pipes with stopcocks and casing and packing them in order to prevent freezing, as affecting defendant's negligence.

Our conclusion of the whole matter is that the inquiry concerning defendant's negligence involved a mixed question of fact and law, which ought to have been submitted to the jury upon correct instructions.

It follows from what has been said that the action of the trial court in sustaining the demurrer to the evidence was erroneous. The judgment must, therefore, be reversed, and judgment will be entered here for the damages provisionally assessed by the jury.

*Reversed.*