# Richmond

MAXIE CAUDILL v. GIBSON FUEL COMPANY, INCORPORATED.

June 10, 1946.

Record No. 3061.

Present, All the Justices.

The opinion states the case.

*Henry C. Bolling*, for the plaintiff in error.

*Fred B. Greear*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action against a landlord to recover damages for personal injuries suffered by the wife of the tenant in consequence of a defective condition of demised premises.

In a notice of motion for judgment, the plaintiff, after setting out her occupancy of a dwelling house rented by her

husband from the defendant, alleged that while she "was using the porch of said dwelling, walking over and along the same customarily used by the tenants of said dwelling, * * * which front of said porch and the sills thereof were decayed, defective, and in bad condition, and by reason of said condition of said floor and sills, which you and your employees and agents had knowledge of, the undersigned broke through said floor and fell, breaking her left arm, etc." She further alleged that, "On account of the breaking and falling of the said porch floor, causing the sills to fall, occasioned by the defective premises and unsafe and defective condition thereof brought about by your wilful negligence, the undersigned was so injured that she was unable to go about her regular work * * * ."

The defendant filed a plea of the general issue and its grounds of defense. In its grounds of defense, it stated that there was no duty on the defendant to provide safe porches at the home leased to the plaintiff's husband; that the defective condition of the porch on the premises occurred subsequent to its lease; that its decayed condition was more apparent to the plaintiff than to the defendant; and that the plaintiff was negligent in using it when she knew of its condition.

The trial court, on motion of the defendant, struck the evidence at the conclusion of the testimony for both parties and, on the verdict returned, entered judgment for the defendant.

It is contended that the court erred in the above ruling, and also in overruling plaintiff's motion to strike the defendant's plea and grounds of defense because they were not filed within the time originally set by an order of the court.

The facts are not greatly in dispute.

In November, 1941, the defendant leased some properties of a mining company, which had been operating for about ten years under a receivership. These properties included about two hundred dwelling houses built for the use and occupation of the employees of the mining company. The

houses had not been kept in good physical condition and were badly in need of repairs. An inspection of them was made by the defendant, and repairs were undertaken by it with such labor and material as could be secured under the existing war time regulations. W. M. Caudill, a mining employee of the defendant and its predecessor, then lived with his wife, Maxie Caudill, and their children in one of the dwellings. This house was found to be in such a bad condition that it was considered unsafe for tenancy. The cost of repairing it was estimated to be greater than the cost of a new building. Caudill was accordingly asked to move to a house in better condition. He was informed that he might have his choice of one of two vacant houses in another section of the settlement. Caudill selected one of these houses and moved his family into it. His rent was fixed at $7 per month and taken from his wages as a miner. On the porch of this house, about two years later, occurred the injury complained of.

The building, a part of which the Caudills occupied, is generally called a duplex; that is, a house built to accommodate two families, with a solid partition through the middle dividing it. It was two stories high and contained six rooms, three rooms in each end, one upstairs and two downstairs. The Caudill family lived in one side and another family in the other side. Each family had complete control and supervision over its side of the duplex house. There were no common passageways or entrances.

The house and its porches were constructed of white or soft pine wood about thirty years ago. It was built on wooden post supports on the side of a hill, and had porches on the east and west sides. On the west side occupied by the Caudills, there was a porch six by nine feet, which was about fifteen inches from the ground on the upper side and about two feet on the lower side.

At the time the Caudills moved to this house, its porch floor did not have any holes in it; but the steps to it were broken and Mr. Caudill said it was apparent that the floor

was not very strong. During their first two years of occupancy, some time prior to the accident here complained of, the porch floor broke through in two places, both near its outer edge. In size each of the holes was seven or eight inches in diameter, and fully apparent to the family. They, however, continued to use the portion of the porch next to the wall of the house, and stepped on and off its end where it was about fifteen inches from the ground.

Due to the poor condition of the houses, some of the tenants and the officers of the local mining union, from time to time, requested the defendant to make repairs. To comply with these requests, the company kept in its employ two or more carpenters or repair men. At the direction of the defendant, these men undertook to repair first the houses which were in the worst condition.

John Collins, a witness for the plaintiff, in describing the general condition of the Caudill dwelling, from an outside view, used the following ineloquent but expressive language: "It was as bad as it could be it looked like to be lived in," and "The outside was tore off and holes in it, and looked like the porch was going to fall down."

Mr. Caudill went to the foreman of the carpenters, who was working on the houses, and asked that a new floor be placed on the porch of his home. He was told that it could not be repaired just at that time because the necessary material was not available. The foreman said that he went to the premises and made a casual inspection of its external condition, and saw the two holes which had broken through the porch. He made no inspection of the underpinning of the porch, and thought that its floor was all that needed to be repaired at that time. He agreed with Mrs. Caudill that a new porch floor was needed. Further, as he was leaving the house, he looked beneath the rear end of the main building, and told Mrs. Caudill that its props and supports did not look strong enough to him to hold the weight of such a large house. He advised her that it was a good time for her to move to another house, and suggested that she move to a

building which had been recently repaired. Mr. and Mrs. Caudill subsequently looked at the suggested building, but made no effort to move there.

Mrs. Caudill testified that on May 17, 1944, while she was about her household chores, she stepped upon the portion of the porch where the floor was sound and that.the support for the end of the porch next to the house gave way, letting the porch floor drop toward the ground; that the fall of the porch floor threw her towards its front, causing her to slip and fall, plunging her foot into one of the decayed holes in the floor and her left arm through the other. She suffered a fracture of the left arm and other injuries.

Mrs. Caudill and her husband admitted that they knew the exposed floor of the porch was rotten; that the two holes in it had broken through during their occupancy; and that they had taken no precaution to repair the same, or to investigate the exact condition of the porch or its underpinning. They said that although they requested repairs to the porch floor, they never looked under the porch to ascertain its condition. They furnished no information as to how or why the holes were broken in the floor, other than to say that the floor had decayed where it was exposed to the weather.

The evidence for the plaintiff, which is all that need be considered here, shows·that a sill of the porch, which was nailed to the main part of the building, broke loose, and the supports on the corner of the porch gave way, so that the entire end of the porch floor dropped to the ground. It subsequently appeared that the two by four and two by six white pine sills beneath the porch floor were decayed. There is no evidence that either the plaintiff, her husband, or the defendant formerly knew anything about the conditions of the sills. No one had ever taken up the floor of the porch, nor looked under it to inspect the underpinning. The outside sill around the edge of the porch was plainly visible. The top of the porch floor at that end was fifteen inches from the ground, and the sills and the floor normally included eight or ten inches of that space, leaving only a few inches of clearance between the sills and the ground.

The plaintiff, in her notice of motion for judgment, alleged that while she was walking on the porch, she broke through the floor and fell. The effect of her evidence is that the underpinning of the porch gave way or its sill broke loose from the dwelling house, causing the porch to drop and throw her off balance. In considering all of the evidence in this case, this conflict is not material, in view of the applicable law.

It is the contention of the plaintiff that the court erred in striking the evidence, because it was sufficient to show that the defendant, by reason of its promise to repair, retained "supervision" of the rented house; second, to disclose that the defendant knew of the decayed condition of the supports of the porch and concealed that condition from the plaintiff; and, third, to make the issue of contributory negligence a question of fact for the jury.

■ We cannot agree with the plaintiff as to grounds one and two, and it is unnecessary to consider the third.

Caudill and his family had complete possession and control of the house in which they lived, its entrances and porches. There was no reservation of the right of possession for the purpose of making repairs. There were no common passageways or platforms involved. There was no concealment of facts, nor fraud practiced by the defendant. The evidence makes it perfectly clear that neither party knew of any defects in the supports to the porch floor. The plaintiff had as great, if not greater opportunity to ascertain these defects as the defendant. She lived with them for two years. She had full opportunity to know all that anybody could know.

Under the circumstances here, we must determine whether the breach of a landlord's agreement to repair imposes upon him liability in tort for personal injuries to his tenant or one in privity with the tenant.

■ This question has often been decided by the courts of this country. Where the right of possession and enjoyment of the leased premises passes to the lessee, the cases are prac-

tically agreed that, in the absence of concealment or fraud by the landlord as to some defect in the premises, known to him and unknown to the tenant, the tenant takes the premises in whatever condition they may be in, thus assuming all risk of personal injury from defects therein. An agreement by the landlord to repair does not affect the rule, so far as concerns the landlord's liability for personal injuries, due to defects in the premises leased for a private purpose, although the existence of the defect is attributable to the failure to repair. Annotations 8 A. L. R. 765; 68 A. L. R. 1195; 32 Am. Jur., Landlord and Tenant, section 23.

Accordingly, citing a large number of cases adhering to the general rule, Mr. Justice Hudgins, in *Newman* v. *Early*, 176 Va. 263, 265, 10 S. E. (2d) 885, said:

"A majority of the courts hold that the failure of the landlord to fulfill his promise to repair property in possession and control of the tenant does not impose upon him any liability in tort."

At common law, which obtains in this jurisdiction, a lessor is under no implied covenant to repair or keep in repair the demised premises. Accordingly, it is said in Shearman and Redfield, on Negligence, Revised Edition, section 784:

"Under the common law, as a general rule, the landlord does not engage his liability to the tenant or to any one else when he lets a building, or a portion of it, in a patently defective condition. The tenant takes the premises as they are, and his invitees take the risks of the situation."

And further, in their same work, the authors say in section 786:

"Generally it is held that, where complete possession is surrendered to the lessee, no action of tort can be maintained against the lessor except for fraud or concealment, hence that no recovery can be had for personal injuries on account of the landlord's failure to repair, and that his covenant to repair renders him liable only to an action for the breach of covenant, in which recovery is limited to the costs of repairs

and any loss of use suffered by the tenant after the lapse of a reasonable time from giving the notice in which to make repairs; the tenant, in such cases, it is said, having the remedy in his own hands, viz., the right to make the repairs in default of the landlord's doing so, and to deduct the cost from the rent, or, if the premises are thus rendered dangerous, to elect eviction by moving out, or, as is sometimes held, the difference in the rental value caused by such failure.

" 'Liability in tort is an incident to occupation or control. By preponderant opinion, occupation and control are not reserved through an agreement that the landlord will repair.' "

The rationale of the general rule is stated in Tiffany on Landlord and Tenant, Volume 1, page 592:

"A question of difficulty has arisen in connection with a landlord's covenant to repair, as to whether the tenant can recover, as against the landlord, for an injury to his person, or to his property on the premises, which would not have occurred had the landlord complied with his covenant. Such injuries resulting not directly from a breach of the contract, but from physical conditions existing apart from the contract, which the contract merely undertook to eliminate, cannot well be regarded as a proximate result of the breach of the contract, within the contemplation of the parties at the time of the making thereof. To allow a recovery for such injuries is to allow a recovery as for tort on account of a breach of contract. As has been remarked, there is no more reason for allowing such a recovery against a landlord than against any other person, a carpenter or contractor, for instance, who fails to carry out his contract to repair the premises."

The cases of *Boulevard Apartments* v. *Evans*, 177 Va. 315, 14 S. E. (2d) 310; and *Williamson* v. *Wellman*, 156 Va. 417, 158 S. E. 777, relied on by the plaintiff, have no application to the facts here.

Following the reasoning employed in *Newman* v. *Early*, *supra*, it may be said: If knowledge of the defective condi-

tion of the underpinning of the porch is to be attributed to the defendant by reason of the holes in the porch floor, then the same knowledge is to be attributed to Mrs. Caudill. If negligence in permitting a dangerous condition is to be charged to the defendant, then equal negligence in using the porch is to be attributed to the plaintiff. At least, both tenant and landlord had an opportunity to find out and ascertain the conditions and were put on equal notice.

■ The second assignment of error is without merit.

The notice of motion for judgment was returnable to the October, 1944, term of the trial court. At that term, an order was entered directing the defendant to file its pleadings by December 1st. The case was continued by agreement of the parties to the January term, 1945. The pleas were filed on January 3, 1945, which was two weeks prior to the beginning of the January term. Plaintiff's counsel was furnished copies on the date of filing, and no objection was made by him. When the case was called on the first day of the January term, plaintiff still made no objection. The parties agreed that they would be ready for trial on January 18, 1945, the day set for it. On that day, the parties again announced that they were ready. The jury was called, selected, and sworn. After the witnesses were sworn and excluded from the court room, counsel for the plaintiff asked to see the court in chambers. Objection was then, for the first time, made to the defendant's plea and grounds of defense as not having been filed in proper time. Plaintiff's counsel also contended that the order requiring the defendant to file any and all pleas amounted to a request from him for the defendant to file a plea of contributory negligence, if it intended to rely upon same. Neither defendant's counsel nor the court understood that there had been a request for a plea of contributory negligence. However, defendant, with the consent of the court, then filed its plea of contributory negligence, and the trial proceeded. This plea merely set forth one of the grounds relied on in the grounds of defense filed on January 3rd.

Virginia Code, 1942, (Michie) section 6091, reads as follows:

"In any action or motion, the court may order a statement to be filed of the particulars of the claim, or of the ground of defense; and, if a party fail to comply with such order, may, when the case is tried or heard, exclude evidence of any matter not described in the notice, declaration, or other pleading of such party, so plainly as to give the adverse party notice of its character. (Code 1887, sec. 3249.)"

The time of filing pleadings in the trial court is left to the sound discretion of the court. The purpose of the above section is to give to the opposing party more definite information of the character of the claim, or defense than is generally disclosed by the declaration, notice, or plea, and to prevent surprise. There was no surprise to the plaintiff or her counsel in this case. They had both ample notice and definite information as to the character of the defense in the statement filed by defendant on January 3, 1945.

For all of the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*