# The Business Bank

## v.

# F.W. Woolworth Company, et al.

Record No. 911616

September 18, 1992

Present: All the Justices

*Thomas P. Dugan (Surovell, Jackson, Colten & Dugan*, on brief), for appellant.

*Linda Lemmon Najjoum (Hunton & Williams*, on brief), for appellee F.W. Woolworth Company.

*Steven K. Davidson (Steptoe & Johnson*, on brief), for appellees Thomas R. Green, Antonoff Family Trust Partnership, Gary L. Antonoff, Steven R. Antonoff and Sandra L. Lackner.

JUSTICE LACY delivered the opinion of the Court.

In this case we consider whether a lessee of commercial property is entitled to recover from the lessor sums expended to replace an air conditioning system.

In October 1984, F.W. Woolworth Company subleased space in a shopping center to The Business Bank. In 1989, the Bank began to experience problems with the air conditioning system and on May 17, 1989, entered into a contract with Bennett Air Conditioning Company to replace the system for $25,920. The following day, the president of the Bank sent a letter to Thomas R. Green, assignee of Woolworth's interests in the lease, advising Green of the Bank's decision to replace the air conditioning system. In this letter, the Bank informed Green that it would "invoice" Green for the replacement expense. When Green refused to pay for the replacement of the system, the Bank instituted this lawsuit for breach of contract and damages to cover the cost of replacement.

After presentation of evidence by both parties, the trial court concluded that although "Article 10 [of the lease] requires the landlord

to furnish HVAC services . . . [t]here is no affirmative duty on the landlord to repair or to replace'' the air conditioning system under that Article. The trial court further held that, even if Article 10 imposed a duty to repair or replace the system, "the law would require that there be notice to the landlord for the landlord to fulfill that responsibility before the tenant could then replace the unit.'' Finding that the Bank did not provide prior notice either to Woolworth or to Green, the trial court granted Woolworth's motion to strike the Bank's evidence and dismissed the Bank's motion for judgment with prejudice.

It is undisputed that the lease contained no provision expressly requiring the lessor to repair the air conditioning system.[1] But, the Bank argues, by failing to provide air conditioning as required under the terms of the lease, Woolworth breached the lease, and that the Bank was entitled to sue for and recover damages for that breach. Since the lease does not specify the measure or amount of damages available for this breach, the Bank relies on the Restatement (Second) Of Property § 10.2 (1977), as illustrative of the options available to it. The Bank seeks the measure of damages identified in subsection 6 of that section:

> if the tenant eliminates the default, the reasonable costs incurred by the tenant in eliminating the default.

This remedy, the Bank argues, does not include a requirement that the lessee notify the lessor prior to eliminating the default and, therefore, the trial court erred in imposing such a requirement. We disagree.

The circumstances which would entitle the Bank to avail itself of the measure of damages described in § 10.2 of the Restatement are outlined in § 7.1 of the Restatement:

> [I]f the landlord fails to perform a valid promise contained in the lease to do . . . something on the leased property . . . and as a consequence thereof, the tenant is deprived of a significant inducement to the making of the lease, and if the landlord does

---

[1] Under the common law, absent an express covenant to the contrary, a lessor generally is under no obligation to repair the premises and the lessee takes the premises as he finds them. *Adams* v. *Ches. & O.R. Co.*, 118 Va. 500, 502, 88 S.E. 171, 172 (1916); *see Kesler* v. *Allen*, 233 Va. 130, 133, 353 S.E.2d 777, 779 (1987). Lessors of residential premises, however, under certain circumstances have a statutory duty to repair and maintain premises. *See* Code § 55-248.13.

not perform his promise within a reasonable period of time after being requested to do so, the tenant may:

. . . .

    (2) continue the lease and obtain appropriate equitable and legal relief, including:
        (a) the recovery of damages to the extent prescribed in § 10.2.

This section specifically makes notice and opportunity to cure prerequisites to the selection of and recovery under the damage options identified in § 10.2 of the Restatement. Such a requirement is consistent with the jurisprudence of this state. *E.g.*, *Caudill* v. *Gibson Fuel Co.*, 185 Va. 233, 240-41, 38 S.E.2d 465, 469 (1946); *see* Code § 55-248.23 (notice and cure provisions relating to essential services to leased residential real estate). Thus, we agree with the trial court's conclusion that the Bank was not entitled to recover damages for Woolworth's alleged breach without first providing the lessor with notice and an opportunity to correct the default.

The Bank next asserts that the May 18, 1989 letter from the Bank to Green constituted the requisite notice. The trial court held that this letter, informing Green that the Bank was ''proceeding to replace the [air conditioning] units,'' did not give the lessor the opportunity to repair, replace or ''to somehow do something that would still fulfill his obligations under Article 10 [of the lease],'' which may have been something other than replacing the entire air conditioning system. [2]

We agree that the letter of May 18, 1989 from the Bank to Green did not constitute sufficient notice of the default and opportunity to cure.

Finally, Article 7 of the lease prohibits the lessee from making any ''alterations, changes or improvements'' to the premises without first obtaining the written consent of the lessor. A reasonable construction of this provision encompasses the installation of the new air conditioning system undertaken by the Bank. Failure to obtain the written consent of the lessor further negates any right to recover the cost of the replacement from Woolworth.

Accordingly, finding no error, we will affirm the judgment of the trial court.

*Affirmed.*

---

[2] The trial court also noted that no communication of any kind was given to Woolworth.