ROBERT J.J. SEOANE, ET AL.

V.

DRUG EMPORIUM, INC., ETC.

Record No. 941179

April 21, 1995

Present: All the Justices

*William E. Hassan (Duvall, Harrigan, Hale & Hassan,* on briefs), for appellants.

*James M. Kefauver (James A. Powers; Shulman, Rogers, Gadal, Pordy & Ecker,* on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this appeal, we consider (1) whether a lease required the landlord to replace the roof and heating and air conditioning units located on the roof (the heating and air conditioning units), and (2) if not, whether the tenant lost its possessory rights by withholding over 24 monthly rental payments in reimbursement of those replacement costs incurred by the tenant.

## I

On March 28, 1991, Drug Emporium, Inc. (the tenant) acquired a former tenant's leasehold rights in retail store space containing approximately 30,000 square feet in the Merrifield Plaza Shopping Center in Fairfax County. The shopping center was owned by Robert J.J. Seoane and Evelyn L.M. Seoane (collectively, the landlord).

The parties were subject to the following pertinent terms of a 1969 lease between the landlord and a prior tenant:

### 14. *Maintenance by Tenant.*

Landlord shall guaranty to Tenant the equipment and fixtures installed on behalf of Landlord for a period of three (3) years. . . . Tenant agrees to maintain at all times a maintenance contract on the air conditioning equipment.

### 15. *Maintenance by Landlord.*

Landlord agrees to maintain and promptly *repair* any damage to the *exterior* and to the structure, both interior and exterior, of the Demised Premises, including the roof, plate glass, (except if damages are caused by Tenant or its invitees), structural walls, foundation, and exterior plumbing equipment leading to the Demised Premises. Landlord shall also make any necessary replacements of and to the interior heating plant and air conditioning equipment, and to the plumbing and water systems throughout the term of the Lease, and shall make all other *repairs* to the Demised Premises not required of Tenant under Article 14 hereof. Tenant shall give Landlord written notice of the necessity of any *repairs* required of Landlord.

. . . .

### 18. *Common Areas.*

The Landlord shall, throughout the term of this Lease, maintain the parking area, sidewalks, driveways, and other common areas within the Shopping Center in good condition/and repair and [discharge other duties with regard to the common areas]. In the event Landlord does not perform its obligations under this Article 18, or its *repair* obligations under Article 15, within five (5) days after written notice of

non-performance by Tenant, Tenant shall have the right, but not the obligation, to perform such obligations at Landlord's expense and to recover the costs thereof, together with interest at the highest legal rate, immediately upon demand or by way of offsetting the costs, plus interest, as aforesaid, from the next succeeding installment(s) of the Minimum Guaranteed Rent.

. . . .

### 24. *Care of Premises.*

Landlord shall have the right to enter the Demised Premises at all reasonable hours for the purpose of inspecting the same, or of making *repairs* to said Premises or any property owned or controlled by Landlord. . . .

### 25. *Fire and Extended Coverage.*

. . . .

Tenant shall not be responsible for damage caused by fire and extended coverage perils, including vandalism, malicious mischief and/or explosion; the aforesaid release of Tenant shall also constitute a release of Tenant from responsibility for *replacements* to the Demised Premises which, if necessitated by reasons other than fire and coverage perils, would be Tenant's responsibility under other provisions of this lease.

### 31. *Default.*

If any rental payable by Tenant to Landlord shall be and remain unpaid for more than ten (10) days after written notice of non-payment or if Tenant shall violate or default [sic] any of the other covenants, agreements, stipulations or conditions herein, and such violation or default shall continue for a period of thirty (30) days after written notice of such violation or default, or for such longer period of time as is necessary to cure such default, then Landlord shall be entitled to avail itself of all remedies at law or in equity.

. . . .

### 35. *Tenant's Covenants.*

Tenant will promptly pay all rentals herein prescribed when and as the same become due and payable in accordance with the terms hereof.

(Emphasis added.)

In May 1991, the tenant notified the landlord that it planned to spend approximately $350,000 in leasehold improvements to enable it to occupy and operate the major part of the area as a retail drug store. Because the roof and exterior heating and air conditioning units were allegedly in "serious dis-repair," the tenant advised the landlord that they should be replaced to protect the tenant's improvements and to enable the tenant to operate the drug store. The tenant also advised the landlord that these "repair/replacements" were landlord obligations under the lease and that if the landlord did not fulfill them, the tenant would "perform" them at the landlord's expense and deduct the costs thereof from the succeeding rent installments, all as allegedly authorized in the lease.

The landlord disagreed with the tenant's construction of the lease and advised the tenant that if it made the proposed repairs or replacements without the landlord's written agreement and attempted to recover the costs thereof from the rent, the landlord would consider this "to be a default in the lease and proceed accordingly." Following additional letters in the same vein from each party, the tenant replaced the roof and air conditioning and heating units in the fall of 1991. Beginning in March 1992, the tenant began withholding the monthly rental payments as reimbursement of the $141,243 replacement costs.[1]

In May 1992, the landlord notified the tenant that the tenant was in default because of its failure to pay rent for three months. Since the tenant continued to withhold the monthly rental payments, the landlord filed an action against the tenant in April 1993 for possession of the premises and recovery of the accrued rent. The tenant defended primarily on the ground that its expenditures were authorized under the lease and, therefore, it was not in default.

During a bench trial, the court concluded that the tenant was not entitled to recover the replacement cost of the air conditioning units since the tenant had failed to make "any clear showing that the replacement was required by the condition of [the units]." However, the court held that the heating units "were compromised such that [their] replacement was necessary" and that "the

---

[1] The lease also provided for annual rental payments of a percentage of the tenant's gross receipts from the premises. Apparently, the tenant continued to make these payments.

commercially reasonable interpretation of the lease indicates that the [tenant] should be entitled to withhold the cost thereof from rents due." The court further held that the tenant

> acted in a commercially reasonable manner in replacing the said roof . . . [and] the commercially reasonable interpretation of the lease indicates that the [tenant] should be entitled to withhold the cost thereof from rents due; that the repair obligation of Article 18 is broad enough to include both the roof and the heating equipment obligations.

Finally, because it concluded that the tenant had no right to require the landlord to replace the air conditioning units and also had failed to make a tax payment for which it was responsible under the lease, the court held that the tenant had improperly withheld $33,061.77 from its accrued rental obligation. Accordingly, the court entered judgment against the tenant in that amount,[2] but refused to terminate the lease because of this breach. The landlord appeals.

## II

In the absence of an express agreement, the landlord had no common-law or statutory duty to maintain, repair, or replace either the roof or the heating and air conditioning units. *See The Business Bank v. F.W. Woolworth Co.*, 244 Va. 333, 335 n.1, 421 S.E.2d 425, 427 n.1 (1992); *Caudill v. Gibson Fuel Co.*, 185 Va. 233, 240, 38 S.E.2d 465, 469 (1946).[3] However, the tenant contends that the lease imposed a "repair" obligation upon the landlord, requiring the landlord to replace the roof and exterior heating and air conditioning units if those replacements were "commercially reasonable."[4] The landlord disagrees.

We have noted that "repair" means to fix or "restore . . . what is torn or broken." *Montgomery v. Columbia Knoll Condominium Council of Co-Owners*, 231 Va. 437, 439, 344 S.E.2d 912, 913

---

[2] The court also awarded prejudgment interest and postjudgment interest at the judgment rate on the amounts improperly withheld by the tenant.

[3] Under certain circumstances, residential lessors have a statutory duty to repair and maintain those premises. Code § 55-248.13.

[4] On appeal, the tenant does not argue that the landlord's obligation to make "necessary replacements of and to the interior heating plant" required it to replace the roof-top heating units. Hence, we do not consider that issue.

(1986) (quoting *Webster's Third New International Dictionary* [1923] (1981)). And the verb "replace" is defined in pertinent part as "to take the place of: serve as a substitute for . . . to put in place of: provide a substitute." *Webster's Third New International Dictionary* 1925 (1986). Indeed, in *Montgomery*, which neither party cites, we distinguished "replacement" from "repair" by noting that a replacement involves an improvement of the article replaced and cannot be characterized as "maintenance or repair." 231 Va. at 439, 344 S.E.2d at 913 (replacement of window units by condominium association over individual owner's objection not authorized by contractual provision requiring maintenance and repair of such units).

■ And, in considering the scope of the landlord's repair obligation, we apply the well-settled principle that language used by the parties in their contract "should be taken in its ordinary signification, and the plain meaning should be ascribed to it," since "courts are bound to say that the parties intended what the written instrument plainly declares." *Brooks v. Bankson*, 248 Va. 197, 203-204, 445 S.E.2d 473, 476-77 (1994). Consequently, if such contractual language is unambiguous, and here both parties agree that it is, we do not apply rules of construction or interpretation; we simply give the language its plain meaning. *See Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).[5] Thus, "commercially reasonable" considerations are immaterial in applying these unambiguous provisions.

■ Accordingly, applying the plain meaning of the language of all pertinent provisions of the lease, we conclude that the landlord's "repair" duty did not extend to replacement even if, as the court found, the roof and heating units could no longer be repaired and required replacement.[6] Therefore, the court erred in crediting the costs of those replacements against the tenant's liability for rent.

## III

Next, we consider whether the trial court erred in denying possession of the premises to the landlord. The tenant contends that,

---

[5] "Construction" is defined in part as "the act of construing, *interpreting*, or explaining a declaration or fact." *Webster's Third New International Dictionary* 489 (1986) (emphasis added).

[6] This conclusion makes it unnecessary to consider whether the evidence supported the trial court's finding that the roof and heating units were required to be replaced.

even if it had breached the lease, its possessory interest in the premises should not be forfeited for several reasons.

■ First, the tenant claims that paragraph 31 of the lease limits the landlord "to seek[ing] remedies at law *or* in equity; it does not, however, automatically *entitle* them to both." The difficulty with this contention is that one of the counts of the landlord's motion for judgment was for unlawful detainer, and the unlawful detainer statute itself specifically provides for *both* forms of relief. Code § 8.01-128 provides in pertinent part:

> If it appear that [possession] was unlawfully detained from [the plaintiff], the verdict or judgment shall be for the plaintiff for the premises, [and] shall also be for such . . . rent as he may prove to have been owing to him.

Hence, we reject this claim.

■ Next, the tenant cites 7A *Michie's Jurisprudence, Equity* § 8 (1985 Repl. Vol.) for the proposition that "[e]jectment is fundamentally an equitable remedy." Building on that premise, the tenant contends that since one count of the motion for judgment was in ejectment, the court was authorized to apply equitable principles in denying a forfeiture of the lease. However, we find nothing in the tenant's cited authority to support its premise,[7] nor are we aware of any case so holding. To the contrary, ejectment was a *common-law* action designed to try title to land, *Burks Pleading and Practice* § 112 at 219 (4th ed. 1952), and by statute it continues to be a law action. Code §§ 8.01-131, -134.

Moreover, this action had nothing to do with the title to the landlord's property; it concerned only the landlord's rental and possessory claims, the essence of the landlord's unlawful detainer count. Accordingly, we find no merit in this contention.

■ Finally, the tenant contends that "equity will relieve against a forfeiture for delay in payment of rent where, under the circumstances, it would be inequitable, and full compensation can be made to the landlord upon the tenant's default." However, the tenant does not say how this principle is related to its pleaded defenses of the "equitable doctrine[s]" of "estoppel," "waiver," and "laches." Nor did the tenant assert, or the court use, any of

---

[7] Indeed, the only reference we find to ejectment in the tenant's cited authority is the following: "An action of ejectment generally affords a complete and adequate remedy for the assertion of title to land."

the tenant's pleaded "equitable doctrines" as a ground for its refusal to award possession to the landlord. Instead, the court premised its denial of possession solely on the erroneous ground that the tenant had not breached the lease. Accordingly, we reject this contention.

■ Since we find no merit in any of the tenant's contentions, we conclude that the court erred in denying possession of the premises to the landlord.

## IV

■ Because of the court's errors in crediting the tenant's replacement costs against its liability for rent and in denying possession to the landlord, we will reverse the judgment and remand the case for entry of an appropriate order of possession and for further proceedings consistent with this opinion.

*Reversed and remanded.*