## CIRCUIT COURT OF FAIRFAX COUNTY

Susan Walters et al.

v.

Dawn Martin

April 2, 1998

Case No. (Law) 167759

BY JUDGE DAVID T. STITT

The landlord-tenant area of the law lends itself to misunderstandings and to disputes. For that reason, it is a very regulated area of the law, and the General Assembly has passed the Virginia Residential Landlord-Tenant Act. However, it has been stipulated, and the stipulation is correct in my view, that this case is not under the Virginia Residential Landlord-Tenant Act. It is exempt pursuant to Virginia Code § 55-248.5.

This is a common law lease. Notwithstanding that fact, Virginia law again regulates this area of the law heavily. There is a substantial amount of precedent that relates to this, and I am going to go over some of that because it is the framework within which I am going to make my decision.

*Powell v. John E. Hughes Orphanage*, 148 Va. 331, 138 S.E. 637 (1927), holds that a landlord does not owe to his tenant the duty of actively exerting ordinary care at the time of the leasing of the property to discover and apprise

the tenant of hidden defects in the premises, if any. In the absence of actual knowledge, the tenant takes the risk of the premises as they are. It also holds that there is no covenant or warranty implied that the premises shall be fit and suitable for the use for which the lessee requires them, whether for habitation or otherwise. And it goes on to state that the rule of caveat emptor applies to leases of real estate. Of course, this is in the absence of the application of the Virginia Residential Landlord-Tenant Act, which is not applicable here.

The caveat emptor rule applies to leases of real estate, control of which passes to the tenant, and it is the duty of the tenant to make examination of the demised premises to determine their safety and adaptability for the purposes for which they are hired.

*Business Bank v. F. W. Woolworth Co.*, 244 Va. 333, 421 S.E.2d 425 (1992), construes a lease which prohibited the lessee from making any alterations, changes, or improvements to the premises without first obtaining the written consent of the lessor. That case related to the installation of a new air conditioning system by the Bank, and the principle is that the failure to obtain the written consent of the lessor negated any right to recover the cost of the replacement.

*Buchanan v. Orange*, 118 Va. 511, 88 S.E. 52 (1916), stands for the proposition that there will be constructive eviction of someone from leased premises only if the lessee abandons the premises. It makes it clear that there are circumstances under which a tenant may abandon premises, but that is basically what you have to do if you are going to try to avoid paying the rent. And that was the principle of *Cavalier Square, L.P. v. Virginia Alcoholic Beverage Control Bd.*, 246 Va. 227, 435 S.E.2d 392 (1993), which holds that to constitute a constructive eviction, there must be a complete abandonment by the lessee of the demised premises within a reasonable time after intentional conduct by the lessor permanently deprives the lessee or assignee of the beneficial enjoyment of the premises. Again, it makes it clear that the remedy, rather than rent abatement or something like that, is abandonment.

The burden of proving a constructive eviction, as with any affirmative defense, rests upon the party asserting it, which is Ms. Martin in this particular case.

*Caudill v. Gibson Fuel Co.*, 185 Va. 233, 38 S.E.2d 465 (1946), holds that in the absence of concealment or fraud by the landlord as to some defect in the premises known to him and unknown to the tenant, the tenant takes the premises in whatever condition they may be, thus assuming all risk of personal injury from defects therein. It also holds that at common law, in this jurisdiction, the lessor is under no implied covenant to repair or keep in repair the demised premises.

There is a negligence count in this case. *Luedtke v. Phillips*, 190 Va. 207, 56 S.E.2d 80 (1949), holds that the failure of a landlord to keep his promise to repair property in the possession and control of the tenant does not impose upon the landlord any liability in tort.

I also found to be very much on point the case of *Halifax Eng'g, Inc. v. Doyle, Inc.*, 23 Va. Cir. 466 (1991), by Judge Annunziata when she was with this Court. That case does a good job of spelling out the rights of landlords and tenants in situations like this.

Now, with that as the framework, I turn first to the rent issue. Again, there just simply is not any rent abatement procedure available to ·a lessee of residential premises, absent some statutory provision, which is not present here. And, accordingly, in order to abate the rent, a lessee must vacate the premises. The defendant did not vacate the premises here until the middle of February.

In order to avoid the payment of this rent, Ms. Martin would have had to prove fraud. On the evidence that I have before me, and I would have to find fraud by clear and convincing evidence, I simply am unable to find fraud. There is no clear and convincing evidence in this case that there was any fraud involved on the part of the Walters. It is clear that they were aware that there was a roach problem, but as far as fraud is concerned, it is clear from the testimony, and Ms. Walters testified, that they had had several exterminators work on this townhouse. She did tell Ms. Martin that "if there are any further problems, let me know, I've got a contract with the exterminator."

But I find, as a matter of fact or law, that there was nothing that the Walters were aware of by way of a significant latent defect in these premises that they had some duty at that point to make Ms. Martin aware of or that they did not in fact make her aware of.

The rental application, Plaintiff's Exhibit 2, says on its face, and it is incorporated in the lease, that the premises are leased in their present condition. The defendant did have a duty to inspect and did, in fact, inspect. And in this situation, if it had been something that somebody could walk through and see, I am sure she would have seen it. She did not see it. Neither did some other people.

The lease itself says, particularly with regard to the dishwasher, that it is presented as-is. Again, I find as a matter of fact and a matter of law there was no fraud in this case.

The law of Virginia is very clear on this issue. It says if you do not abandon, you must pay the rent. For that reason, the defendant will be found liable to the plaintiff for the October, November, December, and January rent of $1,300.00, February rent of $650.00, and late payments for October,

November, December, January, and February of $50.00 each. That is a total of $6,100.00. That award is made to the plaintiff.

I now turn to the counterclaim. If the result that I am about to outline is harsh, the only thing I can say is that at each step of this process, people had choices, and whatever choices that they did make may not have been the best choices. They may have been based on an understanding of the law of other jurisdictions, but that is neither here nor there.

The problem with the counterclaim is Paragraph 13(b) of the written lease which was entered into and signed by the plaintiffs and by the defendant. Paragraph 13(b) is titled, "Landlord consent required." The tenant is required to submit a written request, including any plans for restoration, to the landlord. The landlord's consent must be in writing prior to any of the following: (1) remodeling, making any structural change, alteration, addition, or decoration, including papering and painting of the premises, and (2) installing, attaching, removing, or exchanging appliances or equipment such as air conditioning, heating, refrigeration, TV antennas, wood-burning stoves, fireplace inserts, or kerosene heaters. Basically, both of those are broad enough to cover virtually anything that we are talking about here. And the evidence I have before me is undisputed, that there were oral conversations, but written consent was never sought and written consent was never given. To the contrary, there was testimony about a letter's being delivered to Ms. Martin basically saying that the lessors will not be responsible for any replacement or repair bills on this unit without prior written approval. And that was on September 8, 1997. So, not only was there notice in the residential deed of lease, which is in evidence as Plaintiff's Exhibit 1, but there was actual notice of provision 13(b) delivered by the plaintiffs prior to all this taking place.

[The counterclaim is denied.]