# Staunton

O. T. Graham, Sr., Et Al. v. Commonwealth of Virginia, Et Al.

September 10, 1965.

Record No. 5991.

Present, All the Justices.

*James C. Roberts (Tucker, Mays, Moore & Reed, on brief), for the plaintiffs in error.*

*Richard N. Harris, Assistant Attorney General (Robert Y. Button, Attorney General, on brief), for the Commonwealth.*

BUCHANAN, J., delivered the opinion of the court.

The issue on this appeal is on the proper construction of the contract between the litigating parties. There is no controversy about the facts.

By agreement dated August 1, 1958, Graham Brothers, the appellants, hereinafter referred to as plaintiffs, entered into a contract with the State Hospital Board of the Commonwealth, referred to herein as defendant, to construct a kitchen-cafeteria building for Central State Hospital, at Petersburg. The parties later disagreed about compensation to the plaintiffs for extra work. Plaintiffs instituted this action against defendant, and its comptroller, for $35,374.50 for the work. The case was heard by the court below without a jury and at the conclusion of the plaintiffs' evidence the court sustained a motion to strike and entered judgment for the defendant as to $27,060 of the plaintiffs' claim, being for extra excavation in the basement and driveway of the building. No error is assigned to that ruling on this appeal.

Plaintiffs also asserted in their action a claim for $8,314.50 as due them under their contract for excavating 277 cubic yards of "unstable material" from a roadway and for the same quantity excavated to replace it, both at $15 per cubic yard, plus .3 cubic yard of excavation for drain tile at the same rate.

By its final order the court dismissed this claim for $8,314.50 "without prejudice to the rights of the parties to determine the amount due to the plaintiffs from the defendants for such work under the terms and provisions of the Contract Documents upon which this action is based, * *." This ruling is the only matter involved in this appeal. It was based on the court's conclusion that the defendant had the right of selection as to the method of paying for this roadway excavation and fill under section 38(a)(2) of the General Conditions of the Contract, and that it had not yet made such selection.

The Contract consisted of an executed "Form of Agreement," a book of conditions and specifications and certain drawings, all prepared by the defendant's architect. Under it the plaintiffs were required to construct a small section of roadway. In this work plaintiffs encountered an unstable material where the roadway was to be built. Plaintiffs notified the defendant and defendant issued to plaintiffs a "Change Order," which required plaintiffs to excavate and remove the 277 cublic yards of unstable material and to replace it with suitable material excavated from another place. The plaintiffs did the work but did not agree to the price of $3.50 per cubic yard set out in the Order. They claimed they were entitled to $15 per cubic yard under the terms of the contract.

The excavation work to be performed under the contract was from two areas. One was in connection with the building structure and appurtenances, placed under the heading "Excavation" in the specifications, and comprising "Stripping, Excavation, Drainage, Shoring and permanent sheet piling, Filling [and] Backfilling." The other, under the heading of "Stripping and Grading," covered areas upon which roads were to be constructed and contained this specific provision:

"Unstable Materials:

"Where materials encountered within areas upon which roads * * are to be constructed are unstable, such as mud, muck, frozen material or highly organic material, the owner may make any tests at his own expense to determine CBR ratio. *Any additional excavation and fill will be paid for in accordance with unit prices agreed upon.*" (Italics added)

This provision of the specifications, particularly the concluding italicized sentence, is, say the plaintiffs, the nub of the present suit.

Plaintiffs' contention is that the extra work so performed by it in excavating and filling under the roadway constitutes "additional excavation" to be paid for "in accordance with unit prices agreed upon," as promised in the above quoted provision, and that "unit prices agreed upon" are the prices stated in the executed "Form of Agreement" which provides:

"Unit Prices for Changes in Work as Follows:

Additional Work
Excavation          Add $15 per c.y."

The trial court held and the defendant here contends that the situation is governed by section 38(a) of the General Conditions of

the contract, copied in the margin.* In its letter-opinion the court stated that it would agree that the $15 per cubic yard provided for in the Agreement would fix the amount to be paid to plaintiffs if section 38(a)(2) did not contain the words "the applicable unit price (if any) set forth in the contract," and concluded:

"In short, the Court holds that the 'Unit Price for Changes in the Work' for 'Excavation—Additional Work' in the Agreement * * does not conflict with or supersede any provision of the General Conditions, but rather sets the unit price to which reference is made in Section 38(a)(2) of the said General Conditions. This being so, the Court holds that the Owner has the right of selection under that subsection, * *."

As is apparent, section 38(a) provides that compensation for changes in the work shall be determined by one of three methods selected by the defendant (Owner). Subsection (3) is obviously not applicable because defendant did not order plaintiffs to proceed as therein provided. Moreover, the choice of methods of compensation provided in section 38(a) is not applicable to the excavation and filling for which this action was brought, for the reason that, as noted, the specifications specifically provide with respect to "unstable materials" that any additional excavation and fill "will be paid for in accordance with unit prices agreed upon," and the unit prices agreed upon, and the only ones agreed upon for excavation, are those set forth in the Agreement, quoted above, of $15 per cubic yard.

█ If it be doubtful whether the specific provision of the specifications and the "Form of Agreement" or the provisions of section

---

* 38. Changes in the Work.

(a) The Owner may at any time, by written order, and without notice to the sureties, make changes in the drawings and specifications of this contract and within the general scope thereof except that no change will be made which will increase the total contract price to an amount more than 20 per cent in excess of the original contract price without notice to sureties. In making any change, the charge or credit for the change shall be determined by one of the following methods as selected by the Owner:

(1) The order shall stipulate the mutually agreed price which shall be added or deducted from the contract price. If the price change is an addition to the contract price, it shall include the Contractor's overhead and profit.

(2) By estimating the number of unit quantities of each part of the work which is changed and then multiplying the estimated number of such unit quantities by the applicable unit price (if any) set forth in the contract or other mutually agreed unit price.

(3) By ordering the Contractor to proceed with the work and to keep and present in such form as the Owner may direct a correct account of the cost of the change together with all vouchers therefor. The cost shall include an allowance for overhead and profit to be mutually agreed upon by the Owner and the contractor.

38(a) are applicable to the plaintiffs' claim, the plaintiffs are entitled to have the doubt resolved in their favor and against the defendant, the author of the instrument. *Worrie* v. *Boze,* 191 Va. 916, 62 S.E. 2d 876; *Consolidated Sales Co.* v. *Bank of Hampton Roads,* 193 Va. 307, 68 S.E. 2d 652; *Russell Co.* v. *Carroll,* 194 Va. 699, 74 S.E. 2d 685.

Furthermore, the contract itself in section 2(d) of "General Conditions of the Contract" provides that "In case of discrepancies between the Contract Documents, the Specifications shall take precedence over the Drawings and over the General Conditions, and the Agreement shall take precedence over the Specifications, the Drawings and the General Conditions."

■ Defendant states in its brief that it is "precisely our contention" that the provision of the section on "Unstable Materials" in the specifications that "Any additional excavation and fill will be paid for in accordance with unit prices agreed upon" should be construed to mean unit prices "to be" agreed upon; and defendant argues further that "If it is remembered that the $15.00 per cubic yard unit price agreed to in advance in the Form of Agreement is directly referred to by that portion of paragraph 38(a)(2) of the General Conditions which reads 'the applicable *unit* price (if any) set forth in the contract,' then the phrase, 'unit prices agreed upon,'" in the "Unstable Materials" provision of the specifications "can only mean those unit prices upon which the parties might *in the future* agree if the Defendants should select the option of negotiation as they are permitted to do in paragraph 38(a) of the General Conditions."

The contract could have been written, of course, in such manner as to have the meaning for which defendant now argues, but it was not so written and the words used in the contract as written must be given their plain meaning and other words may not be added to change the meaning of those written. *Krikorian* v. *Dailey,* 171 Va. 16, 197 S.E. 442; *American Health Ins. Corp.* v. *Newcomb,* 197 Va. 836, 91 S.E. 2d 447. The phrase "price agreed upon" does not speak of a "price to be agreed upon."

If the option given by section 38(a) is applied to the plaintiffs' claim, then only by choosing to pay the amount ascertained by multiplying the "unit quantities by the applicable unit price set forth in the contract," subsection (2), would plaintiffs be paid for the "additional excavation and fill * * in accordance with unit prices agreed upon," as specifically stipulated for that particular work.

Defendant argues that the unit price of $15 per cubic yard fixed by the agreement applies only to excavation, not to "fill;" but "excavation" is defined in the specifications to include filling; the section of the specifications on Stripping and Grading in which "Unstable Materials" are dealt with provides that grading shall include all operations in connection with excavating and filling; the material used for the filling was obtained by the plaintiffs by excavation; and defendant made no distinction between excavation and filling in its Change Order, but offered to pay the same price for both.

We construe the contract as requiring the defendant to pay $15 per cubic yard for both excavation and filling, and accordingly reverse the judgment complained of and enter judgment for the plaintiffs for the $8,314.50 claimed by them.

*Reversed and final judgment.*