## CIRCUIT COURT OF PRINCE WILLIAM COUNTY

E. H. L. Fisher et al.

v.

Nationwide Mutual Insurance Co.

December 28, 1981

Case No. Law 11494

### By JUDGE PERCY THORNTON, JR.

After carefully considering the memorandums submitted in the subject case and reading the cases cited in the memorandums, I find that I must hold for the defendant, Nationwide Mutual Insurance Company, although my sympathy is with the plaintiff, Patrick Fisher.

For the purpose of the motion for summary judgment, the defendant agrees with the plaintiff's statement of material facts. Plaintiff received a gunshot wound when an uninsured motorist fired a revolver at the family car he was riding in, driven by his father. The assailant was hiding in the trunk of a car, parked on the shoulder of the highway. Plaintiff's father is insured by a Nationwide family automobile policy which contains the following provision regarding uninsured motorist protection:

> The Company will pay in accordance with Section 38.1-381 of the Code of Virginia and all Acts amendatory thereof or supplementary thereto, all sums which the insured or

> his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle.

Thus the issue presented is whether the plaintiff's injury arose out of the use of the uninsured motor vehicle. "The test to be used for this determination is twofold: (1) was the vehicle being used at the time of the accident; and (2) was the use thereof directly connected with or a cause of the ensuing accident. (Citation omitted.)" Bruno v. Hartford Accident & Indemnity Co., 337 So. 2d 241, 244 (La. App. 3rd Cir. 1976).

Whether or not the uninsured motorist was "using" the car when the plaintiff was shot is a threshold question which should be answered before the issue of whether or not the shooting "arose out of the use" of the car is determined. In construing the word "use" in the standard "ownership, maintenance or use" clause of an automobile liability policy, some courts have qualified the meaning of the term. These courts have given the term a narrow meaning, holding, for example, that "use" refers to the normal use of a vehicle. Kangas v. Aetna Casualty & Surety Co., 64 Mich. App. 1, 235 N.W.2d 42, 50 (1975). The Virginia Supreme Court has said:

> The contract could have been written, of course, in such a manner as to have the meaning for which defendant now argues but it was not so written and the words used in the contract as written must be given their plain meaning and other words may not be added to change the meaning of those written (Citations omitted.) Graham v. Commonwealth, 206 Va. 431, 435, 143 S.E.2d 831, 834 (1965).

Thus, if Nationwide had intended to limit the "use" of a vehicle to its proper or normal use, it should have stated this in the insurance policy. In this fact situation the assailant was hiding in the trunk of his parked car at the time of the shooting; however, the insurance policy did not limit the definition of the word "use" to a proper or normal "use" of the vehicle. Based on that, I hold that the uninsured motorist was "using" his vehicle at the time of the accident. Even if the word "use" is considered ambiguous, liability will still be present because of the well-established rule of law in Virginia that "if a 'fair reading' of the policy would support coverage, then that is the reading we must give it. Where an insurance policy is susceptible of two constructions, one of which would effectuate coverage and the other not, it is the court's duty to adopt that construction which will effectuate coverage." Mollenauer v. Nationwide Mutual Insurance Co., 214 Va. 131, 132, 198 S.E.2d 591, 592 (1973).

The next, and last, question to be answered is whether or not the use of the vehicle was directly connected with or a cause of the shooting. In an annotation entitled "Automobile liability insurance: what are accidents or injuries 'arising out of ownership, maintenance or use' of insured vehicle," 89 A.L.R.2d 150 (1963), it is stated:

> All the cases agree that a causal relation or connection must exist between an accident or injury and the . . . use of a vehicle in order for the accident or injury to come within the meaning of the clause "arising out of the ownership, maintenance or use" of a vehicle, and where such causal connection or relation is absent coverage will be denied. The difficulty therefore relates mainly to the determination whether or not there was under the facts of the particular case the required causal relationship.

The Supreme Court of North Dakota has said:

> In determining the meaning of the phrase "arising out of," courts have recognized that the causal relationship need not constitute a proximate cause, but on the other hand if an injury is directly caused by some independent or intervening cause it does not arise out of the use of the automobile, notwithstanding there may have been some remote connection between the use of an automobile and the injury complained of. Norgaard v. Nodak Mutual Insurance Co., 201 N.W.2d 871, 875 (1972).

California cases have been more liberal and have held that the "arising out of" clause "has broad and comprehensive application, and affords coverage for injuries bearing almost any causal relation with the vehicle." State Farm Mutual Automobile Insurance Co. v. Partridge, 514 P.2d 123, 127, 109 Cal. Rptr. 811 (1973).

I am of the view that the shooting of the plaintiff in this case cannot be said to be causally related to the use of the uninsured motorist's vehicle. The use of the revolver, notwithstanding that the assailant was hiding in the trunk of his car at the time of the shooting, constituted an independent and intervening cause of the injury of the plaintiff. The role of the automobile in this case was incidental. The revolver did not discharge as a result of being in the car or for any reason even remotely connected with the vehicle. The fact that the person discharging the revolver was inside the vehicle at the time of the shooting does not make the injury one "arising out of the ownership, maintenance or use" of the car. This accident could have occurred if the assailant had fired the revolver from behind a tree, a rock, or a sign along the shoulder of the highway.