## Richmond

## THE COLONY COUNCIL BOARD OF DIRECTORS, ET AL.

### V.

## HIGHTOWER ENTERPRISES, ET AL.

Record No. 811771.

September 7, 1984.

Present: All the Justices.

*John F. Newhard, Jr. (S. Lawrence Dumville; Breeden, Howard & MacMillan*, on briefs), for appellants.

*John W. Drescher (Jonathan L. Hauser; Pickett, Lyle, Siegel, Drescher & Croshaw*, on brief), for appellees.

THOMAS, J., delivered the opinion of the Court.

In this appeal from a declaratory judgment proceeding, the Court is called upon to construe the word "unsold" as that word is used in the bylaws of the owners' association of the Colony Condominium. The owners' association contends that once a unit is sold it can never be "unsold." The developer, Hightower Enter-

prises (Hightower), contends that any unit held by it either because it was never sold or because it was reacquired after default by a purchaser is "unsold." The status of the units as sold or unsold is pertinent to the question whether maintenance fees and other assessments must be paid for the particular units.

The trial court adopted the developer's construction, concluding that the reacquired units were unsold. The trial court erred in adopting that construction.

The condominium is located on Atlantic Avenue in Virginia Beach. It is a so-called time-sharing condominium which means that the purchasers buy time at the condominium in increments of one week. For example, a purchaser could be said to own the week of January 1 through 7. Only 51 weeks are sold for any unit. The remaining week is reserved for maintenance. There are 39 units with 51 weeks per unit for sale. By multiplying the two numbers, one arrives at 1,989 unit-weeks that could be sold.

By early 1980, the developer had sold all unit-weeks. Certain of those sales were financed through the bank which had made the construction loan. The loans financed through the developer's bank required Philip Hightower's personal guarantee. In addition, the deeds from the developer to the purchasers were held in escrow by the bank until final payment. If the bank called on the guarantee, once the balance on the purchaser's loan was paid by Philip Hightower, the bank would return the deed to Hightower. By the time of trial, 25 of the unit-weeks had been reacquired by Hightower in this manner due to defaults by the purchasers.

The owners' association contends that Hightower was bound to pay assessments and maintenance fees on all such reacquired units. Hightower disputes that claim, relying on the following language contained in the "Fiscal Management" section of the bylaws:

Anything herein to the contrary not withstanding HIGHTOWER ENTERPRISES shall not be required to pay full assessments or maintenance charges for unsold units or unit-weeks but only to make up the deficit between the

sums paid by other owners and the actual costs of operation and maintenance.

This language was drafted by Hightower. Thus, upon familiar principles any ambiguity in the language must be resolved against Hightower. *Baird* v. *Dodson Bros. Exterminating*, 217 Va. 745, 749, 232 S.E.2d 770, 773 (1977); *Graham* v. *Commonwealth*, 206 Va. 431, 434-35, 143 S.E.2d 831, 834 (1965).

The trial court first set forth its views in a ruling from the bench which was transcribed and included in the record. There, the court said, "I think there is uncertainty but not ambiguity. . . . The only thing that creates any uncertainty is the lack of definition as to the word 'unsold.' " The trial court appears to have been of the view that even though the meaning of the word "unsold" was indefinite, the court could be certain that the developer was not obligated to pay the pertinent assessments and maintenance fees. In our opinion, however, the uncertainty as to the meaning of the word "unsold" creates an ambiguity in the meaning of the bylaw language relied upon by Hightower. On these facts, we do not agree with the trial court that a key term can be uncertain without rendering ambiguous the paragraph of which it is a part. In this case, "unsold" could mean "never sold" or "held for sale whether once sold or not." The difference in meaning leads to different consequences.

In both its bench ruling and its final decree, the trial court made clear that in its opinion the units reacquired by Hightower were "unsold" because the deeds had never been delivered to the purchasers. Though the trial court is correct in noting that the deeds for the reacquired units were never delivered to the purchasers, we think its legal conclusion was wrong.

We disagree with the trial court's reasoning that for purposes of applying the bylaws the sale of the unit-weeks was not complete until the deed was delivered. The bylaws make no such statement. Had this been the intention of the parties it should have been spelled out in plain language, not left in a state of uncertainty. Moreover, even if the parties had attempted to classify the unit-weeks as unsold until delivery of the deed, it is not clear to us that

they would have succeeded. The sales contract makes clear that there was to be a closing and that as soon as the unit was certified as ready for occupancy the "Buyer shall be entitled to all rights of possession, occupancy and use granted under this Agreement, except for Deed." Moreover, the contract also states that the "Buyer . . . will pay all dues, assessments, fees and costs . . . that are required or set forth in the Condominium Declaration and By-Laws or any documents therein referred to, before and after, Seller's Warranty Deed to Buyer is delivered." In short, the buyer was to have the rights and responsibilities of an owner but without a deed. This transfer of beneficial interest in the property appears sufficient to us to make the transfer a sale. *Cf. Lipps* v. *First American Serv. Corp.*, 223 Va. 131, 286 S.E.2d 215 (1982) (transfer of beneficial interest in real estate through contract for sale of land sufficient to activate "due on sale clause" prior to closing and delivery of deed). Indeed, in oral argument, developer's counsel admitted that all the units reacquired by Hightower had been sold. In response to a question from the Court on whether the transfer to purchasers was a sale, the developer's counsel stated: "I don't think it's any question but that it was. It was a sale." Therefore, the trial court's conclusion that the unit-weeks in question were never sold is not correct.

■ Thus, we are faced with the question whether a unit-week once sold can somehow become "unsold." In our opinion, some things once lost can never be regained. A virgin forest once harvested can never be a virgin forest again. In this case, we hold that a unit-week once sold cannot become "unsold." It can become reacquired by operation of a guarantee provision; but the bylaw provision does not exempt reacquired unit-weeks. Upon an analysis of the bylaw provision relied upon by the developer to avoid paying assessments and maintenance fees on reacquired units held by it, we conclude that such assessments and fees are owed on all units reacquired by Hightower after default by the purchaser.

In light of our disposition of this appeal, the Court finds it unnecessary to address the other assignments of error raised by the

owners' association. The judgment of the trial court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*