**In re Mark Wesley LEWIS, Debtor.**

**Bankruptcy No. 97–32918–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

July 25, 1997.

---

Robert B. Brown, Paris, Blank & Brown, Richmond, VA, for Debtor.

Bruce E. Arkema, Cantor Arkema & Edmonds, Richmond, VA, for Richard L. and Judith C. Worland.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

On July 23, 1997, the court held a hearing on the debtor's motion to avoid a lien pursuant to 11 U.S.C. §§ 522(f) and (h). After the parties had stipulated to those facts which the court deemed relevant, the court heard oral argument from counsel and then took the matter under advisement. For the reasons set forth in this memorandum opinion, the court will deny the debtor's motion.

### Findings of Undisputed Fact

On August 29, 1996, the Circuit Court for the City of Richmond, Virginia, entered a judgment against the debtor and in favor of Richard L. and Judith C. Worland for $372,621.00. Eight months later, on April 18, 1997, Hanover Bank assigned to the Worlands a promissory note and security agreement which the debtor had executed on August 12, 1994, in consideration for a 1994 Toyota Land Cruiser. The security agreement included a dragnet clause which, in pertinent part, provides that the vehicle "secures this loan (including all extensions, renewals, refinancings and modifications) and any other debt I have with you now or later." The term "I" is defined as "each Borrower who signs this note and each other person or legal entity ... who agrees to pay this note," while the term "You" is defined as "the Lender and its successors and assigns."

Once this assignment had been effected, the Worlands immediately repossessed the debtor's vehicle. On April 21, 1997, the Worlands notified the debtor that, under the terms of the security agreement, the vehicle secured both the amount due under the promissory note and the judgment debt. The debtor responded on April 25, 1997, by filing his petition under Chapter 7 of the Bankruptcy Code and by claiming a $4,500.00 homestead exemption in the vehicle pursuant to Va.Code § 34-4.

On July 2, 1997, the debtor filed the pending motion to avoid any judicial lien asserted by the Worlands to the extent that his homestead exemption would be impaired. The Worlands, however, countered (1) that they held not a judicial lien but rather a security interest in the vehicle which could not be avoided under 11 U.S.C. § 522(f) and (2) that the debtor's voluntary transfer of the interest precludes him from invoking 11 U.S.C. § 522(h).

### Discussion and Conclusions of Law

#### Section 522(f)

The first question of law presented by the parties is quite simple: whether the scope of the dragnet clause included in the security agreement extends to the debt on which the circuit court entered judgment on August 29, 1996. If so, the Worlands hold a security interest in the vehicle which the debtor cannot avoid under § 522(f); if not, the Worlands at most hold a judicial lien which may be avoided under § 522(f) to the extent that the debtor's homestead exemption is impaired.

Although no one disputes that Virginia law must be applied, the courts of the Commonwealth have neither addressed this particular issue nor expressed a view on the propriety of dragnet clauses in general. The vast majority of states, however, have looked upon dragnet clauses with disfavor and have required that the debts sought to be brought within their reach be specifically referenced or bear some relation to one another. *See, e.g., Potomac Coal Co. v. $81,961.13 in the Hands of an Escrow Agent,* 451 Pa.Super.

289, 679 A.2d 800, 804 (1996), *appeal denied*, 547 Pa. 743, 690 A.2d 1163 (1997) (finding "the better-reasoned approach [to be] the one applying the relatedness test"); *Mead Corp. v. Dixon Paper Co.*, 907 P.2d 1179, 1182 (Utah App.1995) (ruling that a dragnet clause will not be construed to cover future advances unless they "are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured"); *Merchants Nat'l Bank v. Stewart*, 608 So.2d 1120, 1126 (Miss.1992) (holding that "antecedent debts will not be deemed within a dragnet clause unless they are specifically identified in the instrument"); *Dixie Ag Supply, Inc. v. Nelson*, 500 So.2d 1036, 1040 (Ala.1986) (observing that dragnet clauses "are disfavored in Alabama law and must be explicit as to other debts where there is an intention to include those debts by reference in a newly executed security agreement"); *In re Kazmierczak*, 24 F.3d 1020, 1022 (7th Cir.1994) (noting that Wisconsin "is one of the states that in order to prevent the abuse of the dragnet clause requires 'relatedness' "); *In re Johnson*, 105 B.R. 661, 664 (D.Kan.1989) (ruling that, under Kansas law, a dragnet clause will encompass antecedent debts only if "clearly identified"); *Western Farm Credit Bank v. Auza (In re Auza)*, 181 B.R. 63, 69–70 (B.A.P. 9th Cir.1995) (finding Arizona law to employ both a "relationship of the loans" test and a "reliance on the security" test); *Fokkena v. First Nat'l Bank of Glidden (In re McLaughlin Farms, Inc.)*, 120 B.R. 493, 506 (Bankr. N.D.Iowa 1990) (ruling that, under Iowa law, whether a later settlement agreement was secured under the dragnet clause in earlier security agreements was "a matter of intent of the parties at the time the original security agreements were executed," which in turn could be discerned from "the language of the security agreement and also to whether the later settlement agreement [was] related to or [was] within the same class as the original debt"); *Lansdowne v. Security Bank of Coos County (In re Smith & West Constr., Inc.)*, 28 B.R. 682, 683 (Bankr.D.Or.1983) (stating that, "[i]n order for future indebtedness to be secured by a future advance clause in the initial security instrument, Oregon law requires that the subsequent debt 'be of the same class as the primary obligation ... and so related to it that the consent of the debtor to its inclusion may be inferred' "); *but see Herkimer County Trust Co. v. Swimelar (In re Prichard)*, 170 B.R. 41, 44 (Bankr. N.D.N.Y.1994) (observing that New York law prohibited the court from interpreting away the obvious meaning of the words involved or supplying additional meanings to them and ruling, therefore, that a dragnet clause was valid and continued the creditor's security interest even after the original note was satisfied); *In re Phillips*, 161 B.R. 824, 826 (Bankr.W.D.Mo.1993) (noting that "Missouri, perhaps because of its more commercial orientation and less debtor orientation, has not engaged in such anti-dragnet comments").

Notwithstanding the weight of this case law, the court notes that Virginia's judiciary has adopted a rather strict approach when asked to construe the language used by parties in their agreements. For instance, in *Graham v. Commonwealth*, 206 Va. 431, 143 S.E.2d 831 (1965), the defendant argued that the phrase "price agreed upon" should have been interpreted by the trial court as "price *to be* agreed upon." The supreme court held, however, that "[t]he contract could have been written ... in such a manner as to have the meaning for which defendant now argues, but it was not so written and the words used in the contract as written must be given their plain meaning and other words may not be added to change the meaning of those written." *Id.* 143 S.E.2d at 834. Similarly, in *Seoane v. Drug Emporium, Inc.*, 249 Va. 469, 457 S.E.2d 93 (1995), the trial court had looked for the "commercially reasonable interpretation" of a lease. *Id.* 457 S.E.2d at 95. The supreme court reversed, ruling that "if such contractual language is unambiguous, ... we do not apply rules of construction or interpretation; we simply give the language its plain meaning. Thus, 'commercially reasonable' considerations are immaterial in applying these unambiguous provisions." *Id.* at 96 (citations omitted). *See also Blue Cross of Southwestern Va. v. McDevitt & St. Co.*, 234 Va. 191, 360 S.E.2d 825, 827 (1987) (stating that, although printed form contracts should be construed against the party who supplies them, "[t]he rule applies ... only when the contract is ambiguous on its face").

Applying these principles to the present dispute, the court concludes that Virginia's judiciary would not require the Worlands' judgment debt to be explicitly referenced in the security agreement, to be in the same class as the automobile loan, or even to be specifically contemplated by the parties when the agreement was executed. Giving the language in the agreement its "plain meaning," the debtor pledged his vehicle as security both for the loan from Hanover and for "any other debt [he and 'each other person or legal entity . . . who agrees to pay this note' has] with [Hanover and 'its successors and assigns'] now or later." These provisions contain no ambiguity, and the court thus has no latitude to employ public policy to alter their meaning.

Therefore, since the debt on which the circuit court entered judgment on August 29, 1996, must have existed either "now or later" [1] and since the Worlands were Hanover's "assigns," the agreement must be read as providing that the vehicle secures the judgment debt. And since this security interest (whether deemed possessory or non-possessory) is not one which can be avoided under § 522(f), this part of the debtor's motion must be denied.

*Section 522(h)*

Pursuant to 11 U.S.C. § 522(h), a debtor may avoid the transfer of any interest in property which could be avoided by a trustee under 11 U.S.C. §§ 544, 545, 547, 548, 549, or 724(a). This authority, however, is conditioned on the debtor having not made a voluntary transfer of the interest. 11 U.S.C. § 522(h), (g)(1)(A). The debtor in this matter, however, executed the security agreement of his own volition, and he therefore is precluded from invoking § 522(h) to avoid the Worlands' interest in the vehicle.

### Conclusion

For the reasons set forth above, then, the court will enter an order denying the debtor's motion to avoid the security interest held by the Worlands in the 1994 Toyota Land Cruiser.

1. The parties introduced no evidence and stipulated to no facts which established the precise date on which this debt arose.

*ORDER*

On July 23, 1997, the court held a hearing on the debtor's motion to avoid a lien pursuant to 11 U.S.C. §§ 522(f) and (h). After the parties had stipulated to those facts which the court deemed relevant, the court heard oral argument from counsel and then took the matter under advisement. For the reasons set forth in the memorandum opinion accompanying this order,

IT IS ORDERED that the debtor's motion to avoid a lien is denied.