464

# CIRCUIT COURT OF THE CITY OF NORFOLK

Norfolk Redevelopment
and Housing Authority

v.

C and C Real Estate, Inc.

February 5, 2007

Case No. CL03-2604

BY JUDGE JOHN C. MORRISON, JR.

This case came before the Court on November 29, 2006, for an evidentiary hearing on C and C Real Estate's ("C and C") "Motion for Attorney's Fees, Costs, and Expenses Under Virginia Code § 25.1-416 [sic]," and on December 13, 2006, for argument of counsel on the evidence previously presented. After a review of the testimony presented on November 29 and of the exhibits introduced with it, the Court finds that Virginia Code § 25.1-419 compels an award of $292,928.70 to C and C as reimbursement for the legal fees, costs, and expenses incurred because of the condemnation proceeding brought by the Norfolk Redevelopment and Housing Authority ("NRHA").

Virginia Code § 25.1-419 reads as follows:

> The Court having jurisdiction of a condemnation proceeding instituted by a state agency to acquire real property by condemnation shall award the owner of any right, title, or

interest in such real property such sum as will, in the opinion of the court, reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if (i) the final judgment is that the state agency cannot acquire the real property by condemnation or (ii) the proceeding is abandoned by the state agency. The award of such sums will be paid by the state agency that sought to condemn the property.

The final judgment in this case was that NRHA could not acquire the real property by condemnation. The Supreme Court of Virginia expressly found that this Court "did not err in determining that the language of Paragraph 1 [of the Property Acquisition section of the conservation plan] is broader than that found in Code § 36-50.1(4) and, therefore, cannot be utilized as a basis for the exercise of eminent domain as authorized by that Code section." *Norfolk Redevel. & Hous. Auth. v. C and C Real Estate, Inc.*, 272 Va. 2, 16 (2006). Virginia Code § 25.1-419, therefore, mandates that this Court award C and C reimbursement of its expenses incurred in defending the condemnation proceeding.

The Supreme Court of Virginia has held that the "party claiming the legal fees has the burden of proving prima facie that the fees are reasonable and were necessary." *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623 (1998). The Supreme Court has also held that in "determining a reasonable fee, the fact finder should consider such circumstances as the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances." *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449 (1991) (citing *Beale v. King*, 204 Va. 443, 446 (1963)). It is clear that an "award of attorney's fees rests within the sound discretion of the trial court." *Coady v. Strategic Resources, Inc.*, 258 Va. 12, 18 (1999) (citing *Ingram v. Ingram*, 217 Va. 27, 29 (1976)). Virginia Code § 25.1-419 also seems to confer some discretion upon the trial court to determine an appropriate award, in that the statute directs the court to provide the property owner with an award that "will, *in the opinion of the court*, reimburse" the property owner for the costs incurred because of the condemnation proceedings." (Emphasis added.) The discretion of the trial court in this area is certainly not unfettered, however; this Court is mindful of Justice Kinser's admonition that an award of attorney's fees should be accompanied by some "evidence of a reasoned analysis by the circuit court of the amount of the requested fees." *Holmes v. LG Marion Corp.*, 258 Va. 473, 484 (1999) (Kinser, J., dissenting). The

following will set forth the Court's analysis of C and C's requested award of fees and costs and the Court's method of calculating the final award.

C and C has requested an award of $321,094.45. This amount represents the sum of Waldo & Lyle Invoices 951 and 1012, dated March 2, 2006, and July 17, 2006, respectively, as well as several invoices from experts retained by Waldo & Lyle, all of which were introduced collectively at the hearing as C and C Exhibit 3, Waldo & Lyle Invoices 1046 and 1053, dated October 18, 2006, and November 29, 2006, respectively, which were introduced collectively at the hearing as C and C Exhibit 4, and Waldo & Lyle Invoice 1058, dated January 10, 2007, which Mr. Lollar submitted to the Court by mail on January 10, 2007. At the hearing, NRHA introduced as its Exhibit 8 a copy of a check from Crenshaw, Ware & Martin, P.L.C., payable to Tim Barrow & Associates in the amount of $1,019.75. Because this check satisfies one of the invoices included in C and C Exhibit 3, the total outstanding request is reduced to $320,074.70.

C and C has made a strong case that the award requested is reasonable. First, C and C argues, and NRHA does not dispute, that the dismissal of a petition for condemnation is a highly uncommon and highly desirable result in this type of proceeding. C and C also introduced very credible expert testimony from Stanley G. Barr, Jr., to the effect that, on the whole, the fees and costs sought are reasonable in view of the favorable outcome achieved for C and C by Waldo & Lyle. The Court, however, is persuaded by NRHA's contention that several of the charges found in the invoices from Waldo & Lyle are in fact unreasonable and will reduce the award accordingly.

## Duplicative Services

C and C must prove that the attorney's fees for which it requests reimbursement correspond to services that "were necessary." *Chawla*, 255 Va. at 623. NRHA Exhibit 11 is a series of partial transcripts from hearings and depositions in this case. This exhibit and the Waldo & Lyle invoices demonstrate that several of the depositions in this case were attended by more than one attorney from Waldo & Lyle. The Court finds that these services were duplicative and unnecessary. On October 15, 2004, both Ms. Price and Mr. Waldo attended the deposition of Steven A. Morales. Ms. Price billed 1.5 hours, at a cost of $250 per hour, under the description "Prepare and attend deposition of Steven A. Morales." Because the transcript demonstrates that the deposition lasted approximately one hour, the Court disallows one hour, or $250, charged by Waldo & Lyle. Similarly, the Court disallows four hours, or $1,000, billed by Ms. Price on October 18, 2004, for the depositions of

Roderick S. Woolard, Bruce A. Watts, and Acquanetta Ellis. The Court further disallows six hours, or $1,500, billed by Ms. Price on October 26, 2004, for the depositions of Craig Allan Holl, Bruce Leuthold, Heather L. Robinson, Jack Alan Thompson, and Acquanetta Ellis.

On October 15, 2004, Mr. Howell billed four hours, or $1,400, under the description "Depositions of Holloman, Morales, and Oberle." On the same day, Mr. Waldo billed six hours to prepare for, attend, and take notes on the same depositions. The Court disallows the four hours and $1,400 billed by Mr. Howell on that day. On October 26, 2004, Mr. Waldo billed 1.25 hours, or $500, under the description "Meeting with client; preparation and deposition of Charles Andrews." On that day, Mr. Howell billed seven hours for taking and preparing for several depositions. The transcript demonstrates that the deposition of Mr. Andrews lasted one hour; for that reason, the Court disallows one hour and $400 billed by Mr. Waldo for that deposition.

Finally, Mr. Waldo and Mr. Howell each billed two hours for preparation for and attendance at a hearing on a Motion to Compel held on June 23, 2004. The Court finds that these services were duplicative and unnecessary; the Court disallows the two hours and $700 billed by Mr. Howell for that hearing.

In summary, the Court disallows as duplicative eleven hours billed by Ms. Price, six hours billed by Mr. Howell, and one hour billed by Mr. Waldo. This reduces the requested award by $5,250, resulting in a total request of $314,824.70.

### Quarter-Hour Billing

The Court is also concerned with Waldo & Lyle's policy of billing attorney and support personnel time in quarter-hour increments rather than in tenth-of-an-hour increments. At the hearing, the testimony of both parties' expert witnesses indicated that billing in tenth-of-an-hour increments is the prevalent practice in the local legal market. For that reason, and because of the strong likelihood that quarter-hour billing results in excessive fees for the services provided, the Court will reduce each single quarter-hour billing entry in the Waldo & Lyle invoices to one-tenth of an hour.

The Waldo & Lyle invoices for this case contain 202 single quarter-hour billing entries. Mr. Waldo invoiced C and C for 57 single quarter-hour entries. For 54 of these, Mr. Waldo charged his former rate of $400 per hour, and for the remaining three, he charged his present rate of $450 per hour. Mr. Howell invoiced C and C for 82 single quarter-hour entries at the rate of $350 per hour. Ms. Price invoiced C and C for one single quarter-hour entry at the

rate of $250 per hour. Mr. Lollar also invoiced C and C for two single quarter-hour entries at the rate of $350 per hour. Christine A. Perry invoiced C and C for two single quarter-hour entries at the rate of $65 per hour. Finally, Donna R. Elliott invoiced C and C for 58 single quarter-hour entries at the rate of $95 per hour.

The Court will reimburse C and C for fees incurred on these charges as though Waldo & Lyle had billed them as one-tenth of an hour entries. Therefore, Mr. Waldo's fees for these entries are reduced from a total of $5,737.50 to $2,295.00, Mr. Howell's fees for these entries are reduced from $7,175.00 to $2,870.00, and Ms. Price's fee for her single entry is reduced from $62.50 to $25.00. Mr. Lollar's fee for his quarter-hour entries is reduced from $175.00 to $70.00, Ms. Perry's fee for her quarter-hour entries is reduced from $32.50 to $13.00, and Ms. Elliott's fee of $1,377.50 for her quarter-hour entries is reduced to $551.00.

These deductions reduce the total of Waldo & Lyle's invoices by $8,736.00. The total requested award, therefore, is reduced from $314,824.70 to $306,088.70.

### Reasonable Hourly Rates for Attorney Services

NRHA argues that C and C's requested award should be reduced because the Waldo & Lyle attorneys have charged unreasonable rates for their services. Despite the expert testimony from Ray W. King that the hourly fees charged by Mr. Waldo and Mr. Howell exceed the market rate for legal services in the real estate area, the Court finds that the fees charged by Mr. Waldo and Mr. Howell are reasonable. Both Mr. Waldo and Mr. Howell are attorneys of long experience and excellent reputation in the legal community. Mr. Waldo is a recognized leader in the field of eminent domain law, and Mr. Howell has devoted considerable time and effort to developing expertise in this field. Waldo & Lyle is a "boutique" firm that limits its practice to eminent domain cases; thus, the services that it provides to its clients are not precisely comparable with legal work performed by other attorneys in the real estate field. Because the hourly rates at which they invoiced C and C were reasonable, the Court will not reduce the reimbursement for Mr. Waldo and Mr. Howell's fees any further than previously noted.

The Court does find, however, that the rates charged by Waldo & Lyle for Ms. Price's services are unreasonable. At the hearing, NRHA introduced as its Exhibit 6 an affidavit from the Virginia State Bar showing that Ms. Price was not licensed to practice law in the Commonwealth until October 15, 2004. Ms. Price invoiced C and C for 142.75 hours of work on this case; she

performed almost all of that work between September 30, 2004, and November 2, 2004. The Court finds that it is unreasonable for an attorney of Ms. Price's experience to charge $250 per hour.

The Court has already disallowed C and C reimbursement for 11.15 hours of work performed by Ms. Price. The Court will allow C and C reimbursement for her remaining 131.6 hours of work at the rate of $150 per hour, resulting in a reduction of the total of Waldo & Lyle's invoices by $13,160.00. The total requested award, therefore, is reduced from $306,088.70 to $292,928.70.

### Terms of the Fee Agreement

NRHA contends that the fee agreement between C and C and Waldo & Lyle, introduced as NRHA Exhibit 1, does not entitle Waldo & Lyle to compensation for much of the work it performed in this case. NRHA bases this argument on the following provision of the fee agreement:

> In the event your case ends up being settled on terms under which you receive benefits other than a monetary award, then to that extent the contingent fee would not apply, and you would pay reasonable attorney's fees based on our time and effort expended on the case.

When a court interprets a contract, "the words used in the contract as written must be given their plain meaning." *Graham v. Commonwealth*, 206 Va. 431, 435 (1965) (citations omitted). In his letter to the Court dated December 29, 2006, counsel for NRHA posits that the "plain meaning of the word 'settled' is 'resolved by consent' as contrasted with dismissal." NRHA argues that because the condemnation proceeding was dismissed, the terms of the agreement permit Waldo & Lyle to collect only those attorney's fees incurred in handling the appeal.

The Court rejects this argument for two reasons. First, the meaning that NRHA ascribes to the word "settled" is not the plain meaning of the word. Rather, "resolved by consent" is a specialized legal definition of the word. In construing the fee agreement, the Court will adopt the dictionary definition of "settle" as "to conclude or resolve." *Webster's New Universal Unabridged Dictionary* (2003). This definition of "settled" is broad enough to encompass the result obtained by Waldo & Lyle in this case.

Secondly, "in construing a contract, a court must 'read the contract as a single document, the meaning of which is gathered from all its associated parts when assembled as the unitary expression of the agreement of the parties'."

*First American Title Ins. Co. v. Seaboard Sav. & Loan Assoc.*, 227 Va. 379, 384 (1984) (quoting *Quesenberry v. Nichols and Erie*, 208 Va. 667, 670 (1968)). Instead of focusing solely on the word "settled," the Court bases its interpretation on the entire fee agreement and the sentence reproduced above. This provision of the fee agreement governs all situations in which the contingent fee arrangement set forth earlier in the fee agreement does not apply. The Court construes the fee agreement to obligate C and C to pay Waldo & Lyle "reasonable attorney's fees" in the event that the contingent fee is not incurred. The Court rejects the argument that the fee agreement does not obligate C and C to pay the fees charged by Waldo & Lyle because the case concluded with a dismissal.

### Referral Fee

NRHA introduced as its Exhibit 7 a letter from Mr. Waldo to Albert L. Fary in confirmation of a referral fee arrangement between Waldo & Lyle and Mr. Fary. NRHA attempted to prove that this referral fee agreement violates Virginia Rule of Professional Conduct 1.5(e), which permits a referral fee such as the one in the present case only with the consent of the client. NRHA has cited case law in support of its position that the fees for which C and C may be reimbursed should be reduced proportionately with the referral fee.

The Court declines to rule on the issue of whether the referral arrangement between Mr. Fary and Waldo & Lyle does in fact violate the Virginia Rules of Professional Conduct. The Court does find, however, that this is not the appropriate forum for enforcement of the Rules. The Preamble to the Rules provides that "[f]ailure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process." Va. Sup. Ct. R. Pt. 6, Sec. II. The Preamble further provides that "[v]iolation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached," and cautions that the "fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." *Id.* For that reason, the Court rules that, even if the evidence presented at the hearing appeared to establish a violation of the Rule 1.5(e) on the part of Waldo & Lyle, such a finding would not be an appropriate basis for a reduction of the fees for which C and C should be reimbursed under Virginia Code § 25.1-419.

*Work Performed on Unsuccessful Claims*

NRHA urges that C and C should not be reimbursed for the entirety of its requested attorneys' fees because some portion of those fees were incurred in the assertion of unsuccessful claims. The Court does not accept this position; rather, the Court reads Virginia Code § 25.1-419 broadly and finds that the statute mandates reimbursement of a property owner for all reasonable costs actually incurred because of the condemnation proceeding.

It is true that in *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 624 (1998), the Supreme Court of Virginia held that "[n]either party shall be entitled to recover fees for duplicative work or for work that was performed on unsuccessful claims." The holding of *Chawla*, however, must be considered in light of the facts of that case. The parties had entered into a lease which required each party to pay the legal fees incurred by the other party in enforcing lease provisions or exercising its rights under the lease. *Chawla* does not require this Court to deny reimbursement to C and C for work performed by Waldo & Lyle on unsuccessful claims.

The Court adopts the rationale used by the Supreme Court of the United States to award attorneys' fees in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In *Hensley*, the Supreme Court held that "[w]here a lawsuit consists of related claims, a [litigant] who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* at 440. Furthermore, the award of attorney's fees in *Hensley* was made pursuant to a federal civil rights statute that permitted federal courts to award attorney's fees to a "prevailing party, other than the United States." *Id.* at 426. Thus, fees were likely to be awarded only to litigants who were asserting claims and affirmatively seeking relief.

In this case, C and C found itself in a defensive posture. In order to retain ownership of the real property in question, C and C asserted several defenses to the condemnation of its property. Although some of those defenses ultimately proved unsuccessful, it would not only be inequitable, but would contravene the terms of Virginia Code § 25.1-419 for the Court not to reimburse C and C for the fees and costs legitimately incurred because of the condemnation proceeding. Furthermore, it cannot be disputed that C and C has obtained "substantial relief" in this case, so it would not be appropriate to reduce the reimbursement to C and C simply because every defense that it employed was not successful.

*Waldo & Lyle Invoice 1058*

Finally, the Court will briefly address Waldo & Lyle Invoice 1058, dated January 10, 2007, which contains charges billed by Mr. Lollar for his efforts related to C and C's Motion for Attorney's Fees. The Court finds that this invoice reflects fees and costs incurred "because of the condemnation proceedings" and that the fees and costs included therein are reasonable.

*Conclusion*

Pursuant to Virginia Code § 25.1-419, the Court awards C and C $292,928.70 from the Norfolk Redevelopment and Housing Authority to reimburse C and C for the costs, disbursements, and expenses incurred by it because of the condemnation proceedings filed by the Authority. The Court finds this award to be reasonable in light of the effort expended by Waldo & Lyle in pursuit of such an unusual and beneficial result.